IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN BROAD *dba* Broad Car Sales & Service | ) ) | CASE NO. 5:11CV02422 |
| | ) | |
| Plaintiff | ) ) | JUDGE SARA LIOI |
| v. | ) ) | MAGISTRATE JUDGE KATHLEEN B. BURKE |
| NORTH POINTE INSURANCE CO. | ) ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant – Third-Party Plaintiff | ) ) ) | |
| v. | ) ) | |
| TODD A. TUCKER | ) ) ) | |
| Third-Party Defendant | ) ) | |

In the early morning hours of January 27, 2009, a fire erupted at Broad Car Sales &

Service in Canton, Ohio, a sole proprietorship owned by Plaintiff John Broad ("Broad").  Broad

submitted a claim under his business insurance policy (the "insurance policy") to Defendant

North Pointe Insurance Co. ("North Pointe") to recover for losses caused by the fire.  North

Pointe ultimately denied Broad's claim and Broad filed this case asserting claims for breach of

contract, bad faith/breach of fiduciary duty,[1] and emotional distress.[2] (Doc. 1).

---

[1] Broad's Complaint alleges a breach of fiduciary duty and bad faith.  These claims appear to be one and the same. *See e.g., Tippel v. R.C. Miller Refuse Service, Inc.,* 2000 Ohio App. LEXIS 524, * 7-8 (5th Dist. 2000) ("[t]he existence of a duty of good faith and fair dealing between an insurer and an insured is based on the fiduciary duty imposed on insurers").

[2] While it is not entirely clear from Broad's Complaint whether he intends to assert a separate claim for intentional infliction of emotional distress or simply has pled emotional distress as a damage component of his breach of contract and bad faith claims (Doc. 1, ¶ 14), North Pointe has construed the Complaint as asserting a separate claim for emotional distress.  Doc. 111, p. 26, Section II.D.

Pursuant to the Order of Reference (Doc. 40), North Pointe's Motion for Summary Judgment (the "Motion") (Doc. 110) is before the undersigned for a Report and Recommendation.  In its Motion and Memorandum in Support (Doc. 111), North Pointe contends that Broad made material misrepresentations to it during the course of its investigation of his fire claim and that those misrepresentations void coverage under the policy.  North Pointe seeks summary judgment on all of Broad's claim. Broad filed an opposition to the Motion, captioned a "Reply" (Doc. 125), and North Pointe thereafter filed its Reply in support of the Motion. Doc. 137.[3]

As discussed below, there is no genuine issue of material fact that Broad made material misrepresentations as to the age and amount of personal property lost in the fire and as to the profitability of his business.  Therefore, the undersigned recommends that the Court **GRANT** Defendant North Pointe's Motion for Summary Judgment (Doc. 110).

The following motions were filed in connection with the summary judgment briefing and are also presently before the Court:

(1) Defendant's Motion for Leave to File Amended Deposition Certification Pages (Doc. 136);

(2) Defendant's Motion to Exclude Opinion Testimony from Dimitrios Pousoulides (Doc. 123);

(3) Defendant's Motion to Strike Plaintiff's Response to North Pointe's Motion to Exclude Opinion Testimony from Dimitrios Pousoulides (Doc. 128);

(4)  Defendant's Motion to Strike Testimony of Dimitrios Pousoulides Offered in Support of Plaintiff's Response to North Pointe's Motion for Summary Judgment (Doc. 129); and

(5) Defendant's Motion to Strike Affidavits of Michael Watson, Dolla Ramey, and Ronald Abraham (Doc. 130).

---

[3] North Pointe's Motion for Summary Judgment does not seek relief against Third Party Defendant Todd Tucker. However, Third Party Defendant Todd Tucker filed an Opposition to North Pointe's Motion for Summary Judgment.  Doc. 131.

In its April 30, 2013, Motion for Leave to File Amended Deposition Certification Pages in support of its Motion for Summary Judgment, Defendant seeks leave to file signed copies of court reporter certifications for the previously filed depositions of John Broad, Jesse Tucker, Todd Tucker, William Blackburn, James Vahila, Alex Semegen, and Dimitrios Pousoulides. Doc. 136.  The Motion for Leave to File Amended Deposition Certification pages (Doc. 136) is unopposed and is hereby **GRANTED**. The signed certification pages attached to Defendant's Motion for Leave (Doc. 136-1 through Doc. 136-8) are deemed filed along with those previously filed deposition transcripts.

Defendant's Motion to Strike Plaintiff's Response to North Pointe's Motion to Exclude Opinion Testimony from Dimitrios Pousoulides (Doc. 128) is **DENIED**.  Defendant filed its Motion to Exclude Opinion Testimony of Dimitrios Pousoulides on April 1, 2013, along with a Memorandum in Support.  Docs. 123, 124.  Thereafter, on April 17, 2013, Broad filed a Reply to Defendant's Motion to Exclude Opinion Testimony from Dimitrios Pousoulides.  Doc. 127. Pursuant to Local Rule 7.1(d), the "party opposing a motion must serve and file a memorandum in opposition . . . within fourteen (14) days after service of any non-dispositive motion."  Local Rule 7.1(d) provides further that, "[i]f a party opposing a motion was served with the motion under Fed. R. Civ. P. 5(b)(2)(C), (D), (E) or (F), three days shall be added to the prescribed period as provided in Fed. R. Civ. P. 6(d)."    As provided for in Fed. R. Civ. P. 5(b)(2)(E), Defendant served its Motion to Exclude Opinion Testimony from Dimitrios Pousoulides on April 1, 2013, via electronic means.  Doc. 123, p. 2 (certificate of service).  Accordingly, as Broad correctly notes, he was entitled to add three days to the time period for filing its opposition,

which made Broad's opposition due on or before April 18, 2013.  *See* Local Rule 7.1(d), Fed. R. Civ. P. 6(d).  Thus, Broad's opposition filed on April 17, 2013 (Doc. 127) was timely filed.[4]

Defendant's Motion for Summary Judgment can be resolved without consideration of the Affidavits of Michael Watson, Dolla Ramey or Ronald Abraham submitted by Broad and without consideration of the testimony of Broad's expert Dimitrios Pousoulides.  Accordingly, the following motions are **DENIED** without prejudice as moot:

(1) Defendant's Motion to Exclude Opinion Testimony from Dimitrios Pousoulides (Doc. 123);

(2) Defendant's Motion to Strike Testimony of Dimitrios Pousoulides Offered in Support of Plaintiff's Response to North Pointe's Motion for Summary Judgment (Doc. 129); and

(3) Defendant's Motion to Strike Affidavits of Michael Watson, Dolla Ramey, and Ronald Abraham (Doc. 130).

## I.   Background

Broad asserts claims for breach of contract, bad faith, and emotional distress arising from North Pointe's denial of his claim for insurance coverage for alleged losses that he sustained when a fire (the "fire") occurred at his business property located at 3928 Mahoning Road NE, Canton, Ohio ("Property").[5]  Doc. 1, ¶¶ 4-14.  North Pointe issued Policy No. NPAC 001308 to John Broad – Broad Car Sales & Service with a policy period of March 21, 2008, through March 21, 2009 ("insurance policy").  Doc. 113, pp. 2 (Lester O'Brien ("O'Brien") Aff. ¶5); Doc. 113, Exhibit A, pp. 9-111 (insurance policy).  Through the insurance policy, North Pointe provided

---

[4] To the extent that Plaintiff requests an award of attorney fees associated with Defendant's filing of its Motion to Strike Plaintiff's Response to North Pointe's Motion to Exclude (Plaintiff's Reply to Motion to Strike (Doc. 132, p. 2)), the undersigned declines to award attorney fees but cautions Defendant North Pointe and its counsel that future filings of a similar nature may be cause for an award of attorney fees.

[5] In August of 2007, Plaintiff took possession of the Property from William Blackburn pursuant to a land contract. Doc. 125-2 (John Broad Aff. ¶ 3); Doc. 113, p. 160 (Exhibit F, John Broad June 19, 2009, Examination Under Oath "EUO", p. 54:10-13). William Blackburn had been in default on the mortgage on the Property; Plaintiff brought the mortgage current and agreed to make the mortgage payments to Consumers National Bank but he did not take title to the Property.  Doc. 125-2 (Broad Aff. ¶ 4); Doc. 113, p. 160 (EUO, p. 57:3-10).

Commercial Property Coverage with the following limits of insurance: $140,000.00 for the building and $90,000.00 for business personal property.[6]   Doc. 113, p. 2, ¶ 6; Doc. 113, p. 69 (Commercial Property Coverage Part Declarations page).

The fire occurred during the early morning hours of January 27, 2009.  Doc. 113, p. 3 (O'Brien Aff. ¶ 10).  On the evening of January 26, 2009, Broad left the Property to celebrate a family birthday at the Mountaineer casino in West Virginia. Doc. 115, pp. 107-109 (John Broad October 25, 2012, Depo.); Doc. 125-2, p. 2 (John Broad Aff. ¶5).  Broad learned of the fire while he was at Mountaineer and proceeded to return home to the Property.  Doc. 115, pp. 108-09 (Broad Depo.); Doc. 125-2, p. 2 (Broad Aff. ¶¶ 6-7).  On or about the date of the fire, North Pointe received notice of the fire loss.  Doc. 113, p. 3 (O'Brien Aff. ¶ 10).

Prior to January 27, 2009, Broad had submitted two claims under the insurance policy that North Pointe paid.  Doc. 113, p. 3 (O'Brien Aff. ¶ 8).  On September 14, 2008, the building suffered wind and hail damage and, on or about October 7, 2008, the building and its contents suffered an act of vandalism and theft.  Doc. 113, p. 3 (O'Brien Aff. ¶ 8); Doc. 125-2, p. 3 (Broad Aff. ¶ 18).  As a result of the vandalism claim that occurred on or about October 7, 2008, North Pointe paid Broad approximately $37,000.00.  Doc. 115, pp. 166-67 (Broad Depo.); Doc. 125-2, p. 3 (Broad Aff. ¶ 19).   On January 22, 2009, five days before the fire, James Vahila ("Vahila"), Broad's insurance agent, notified Broad that his North Pointe insurance policy would not be renewed because of past issues.[7]  Doc. 119, pp. 58-61 (Vahila Depo., pp. 230:24 –

---

[6] Policy No. NPAC 001308 also provided additional coverage, including for debris removal in an amount not to exceed $10,000.00 (Doc. 113, pp. 73-76), personal property of others in an amount not to exceed $2,500.00 (Doc. 113, p. 77), and outdoor property in an amount not to exceed $1,000.00 (Doc. 113, p. 77-78).

[7] In the non-renewal letter, Vahila stated in part ". . . too many problems, too much time spent on claims after they are sent to the insuring company.  Never knowing whether a policy is in force or not, causes me concerns for my own insurance company, not knowing whether your business is towing vehicles long after the tow truck policy has lapsed, etc."  Doc. 119, p. 232 (Vahila Depo., Exhibit 7, January 22, 2009, non-renewal letter).

242:25); Doc. 119, p. 232 (Vahila Depo., Exhibit 7, January 22, 2009, non-renewal letter); Doc. 113, p. 3 (O'Brien Aff. ¶ 9).

Jack Phifer ("Phifer"), a fire investigator with the Cantron Fire Department, was primarily responsible for that department's investigation of the facts and circumstances surrounding the fire.  Doc. 111-2, pp. 1-2 (Phifer Aff. ¶3).  In his affidavit submitted by North Pointe, Phifer states he concluded that "Broad caused the arson at the premises."  Doc. 111-2, p. 5 (Phifer Aff. ¶ 25).  However, Phifer apparently did not put this conclusion in any report and there is no indication that charges were filed against anyone in connection with the fire.[8]

Separate from the Canton Fire Department's investigation, Lester O'Brien, a North Pointe claim representative, investigated the loss and insurance claim stemming from the fire. Doc. 113, pp. 1-2 (O'Brien Aff. ¶3).  As part of its investigation, North Pointe also retained Donald W. Worden of Herndon & Associates as a Cause and Origin expert to investigate the cause and origin of the fire and Allan Topor of Sadler & Associates as an electrical engineering expert.  Doc. 113, p. 3 (O'Brien Aff. ¶¶ 11-12).  On February 17, 2009, Mr. Worden issued his report (Doc. 112, Exhibit B, pp. 8-84) wherein he concluded that the fire was arson (Doc. 112, p. 2 (Donald Worden Aff. ¶5); Doc. 112, Exhibit B, p. 15).  Also, on February 17, 2009, Mr. Topor issued his report wherein he concluded that the fire was not electrical in nature.  Doc. 113, Exhibit B, pp. 113-16.  Also, as part of its investigation, North Pointe retained the services of Attorney Martin Sitler ("Sitler") as coverage counsel.  Doc. 113, p. 4 (O'Brien Aff. ¶ 15); Doc. 111-1 (Sitler Aff. ¶3).

---

[8] The only Canton Fire Department document that appears to be included in the record is an Offense or Incident Report made by Phifer and signed by Broad, which indicates the fire was suspected of being caused by "arson." Doc. 115, p. 256 (Broad Depo., Exhibit 2).  Phifer's Affidavit confirms that Broad was not charged and that his reports did not include his opinion that Broad was involved.  Doc. 111-2 (Phifer Aff. ¶¶ 24-25).

On or about January 28, 2009, Broad retained the services of a public adjuster, Alex Semegen ("Semegen") of Semegen, Morris & Auck, to assist him with his claim, including presenting his claim to North Pointe and responding to North Pointe's inquiries.  Doc. 113, p. 148 (Exhibit F, Broad June 19, 2009, Examination Under Oath ("EUO"), p. 8:15-19); Doc. 115, p. 155 (Broad Depo., p. 155:1-4); Doc. 120, pp. 25-26, 86 (Semegen January 15, 2013, Depo., pp. 24:13-25:3, 85); Doc. 125-9 (Semegen Aff. ¶¶ 6, 12).  Broad and others working on Broad's behalf[9] prepared various inventory lists for Semegen detailing what items of personal property were in the building and where those items were located.  Doc. 120, pp. 32, 43-44, 48, 50-51 (Semegen Depo., pp. 31, 42-43, 47, 49-50).  Semegen had no personal knowledge of the age of each item so, as part of the inventory process, Plainitff and/or individuals acting on his behalf provided Semegen with information regarding the age of each item included as part of his personal property claim.  Doc. 120, pp. 107, 129-30 (Semegen Depo., pp. 106:1-3, 128:17-129:15).  To determine the Actual Cash Value ("ACV") of the items, Semegen indicated that a depreciation factor that was based in part on the age of each item was applied.  Doc. 120, pp. 115-17 (Semegen Depo., pp. 114-116).

Under the insurance policy, Broad was required to cooperate with North Pointe in connection with its investigation of his claim, including submitting information to North Pointe and submitting to questioning by North Pointe.  Doc. 113, p. 79 (insurance policy).  Thus, on February 2, 2009, O'Brien conducted a recorded interview of Broad.  Doc. 113, p. 4 (O'Brien Aff. ¶¶ 13, 18); Doc. 113, pp. 117-23 (excerpts from February 2, 2009, recorded interview).  Semegen was present during the recorded interview.  Doc. 120, p. 58 (Semegen Depo., p. 57).

---

[9] For example, Semegen indicated that, at times, other individuals, including John Slayton and Johnny Broad (Broad's son), were present with Plaintiff to prepare or drop off inventory lists.  Doc. 120, pp. 35, 49-50, 71 (Semegen Depo., pp. 34, 48-49, 70).

On May 1, 2009, Broad signed a Sworn Statement in Proof of Loss ("Proof of Loss") and submitted his Proof of Loss through Semegen. Doc. 113, p. 4 (O'Brien Aff. ¶16); Doc. 113, p. 124 (Exhibit D, Proof of Loss); Doc. 120, p. 53 (Semegen Depo. p. 52). In his Proof of Loss, Broad claimed $243,500.00.[10] Doc. 113, p. 4 (O'Brien Aff. ¶ 16); Doc. 113, Exhibit D, p. 124 (Proof of Loss); Doc. 113, p. 176 (EUO, p. 119:11-21).

As part of his claim submission, Broad also submitted personal property inventories for his business personal property and the personal property of others ("inventories"). Doc. 113, p. 4 (O'Brien Aff. ¶16); Doc. 113, pp. 125-45 (Exhibit E, inventories); Doc. 120, p. 103 (Semegen Depo.); Doc. 120-1, pp. 48-67 (Semegen Depo. Exhibits – Physical Business Personal Property Inventory); Doc. 120-1, pp. 154-156 (Semegen Depo. Exhibits – Personal Effects and Property of Others Inventory). Also, as part of the claim, Broad provided income and expense statements. Doc. 113, pp. 280-83 (EUO, Exhibit T); Doc. 113, p. 332 (EUO, Exhibit BB, Semegen May 1, 2009, letter in response to Sitler's April 3, 2009, letter which included monthly income statements, profit average per vehicle calculation, and monthly expense statement, No. 10 and No. 11).

On June 19, 2009, North Pointe's coverage attorney Sitler questioned Broad under oath in what is known as an Examination Under Oath or "EUO." Doc. 113, pp. 146-338 (Exhibit F, EUO). Semegen was present at the EUO. Doc. 113, p. 147 (Exhibit F, EUO, p. 2).

After receiving information from Sitler that two brothers, Jesse Ray Tucker ("Jesse Tucker") and Todd Tucker, might have information regarding the fire, O'Brien spoke with them

---

[10] The amount of loss and damage Broad reported as $252,265.27 but the amount he claimed was $243,500.00 due to the policy limits. Doc. 113, p. 124 (Proof of Loss); Doc. 120, pp. 127-128 (Semegen Depo., pp. 126:18-127:12).

as part of North Pointe's investigation.[11]  Doc. 113, p. 5 (O'Brien Aff., ¶¶20-22).   On July 31,

2009, O'Brien interviewed Jesse Tucker.  Doc. 113, p. 5 (O'Brien Aff. ¶¶ 20-21); Doc. 113, pp.

339-50 (Exhibit G, transcript of O'Brien's telephone conversation with Jesse Tucker).  During

that interview, Jesse Tucker indicated that Broad had paid his brother Todd to set the fire at the

Property.  Doc. 113, pp. 339-50 (Exhibit G, transcript of O'Brien's telephone conversation with

Jesse Tucker).  Jesse Tucker's statements were based on an alleged conversation that he had with

his brother Todd Tucker.  Doc. 113, p. 342 (Exhibit G, transcript of O'Brien's telephone

conversation with Jesse Tucker).   Jesse Tucker stated again during his deposition that his brother

had told him that he had set the fire at Broad's Property and Broad paid him to do so.  Doc. 116,

pp. 22-23 (Jesse Tucker Depo., pp. 21:24-22:9).  However, during his deposition, he offered

testimony that conflicted with statements he provided to O'Brien during his interview.  During

the interview with O'Brien, Jesse Tucker stated he was at his old house when his brother told

him about the fire.  Doc. 113, pp. 342-343 (Exhibit G, transcript of O'Brien's telephone

conversation with Jesse Tucker).  In contrast, during his deposition, Jesse Tucker stated that he

and his brother were in jail together at the time that his brother told him about the fire.  Doc. 116,

pp. 27-28 (Jesse Tucker Depo., pp. 26:17-27:7).  During his deposition, when asked questions

regarding the fire, Todd Tucker asserted his Fifth Amendment right not to answer but, at one

point during the deposition, stated he had "nothing to do with it."  Doc. 117, p. 51 (Todd Tucker

Depo., p. 50).

---

[11] Phifer had informed Sitler that Jesse Tucker and/or Todd Tucker were suspects in the theft of a Chevrolet Blazer and that they may have information regarding the fire.  Doc. 111-2 (Phifer Aff., ¶ 19); *see also* Doc. 113, p. 5 (O'Brien Aff., ¶ 20). A witness had informed Phifer that, prior to and at the time of the fire, she saw a red Chevrolet Blazer at Broad's property.  Doc. 111-2 (Phifer Aff., ¶ 12).  Also, after the fire had occurred, while Christopher Ramey was at his parents' house, which is located across the street from Broad's Property, he observed a red Chevy Blazer which he recognized as being the vehicle of one of his family members that had been reported stolen.  Doc. 126-2, pp. 17-19 (Christopher Ramey Depo., pp. 16- 18).  Christopher Ramey observed the driver of the red Chevy Blazer (Doc. 126-2, pp. 21-23 (Christopher Ramey Depo., pp. 20-22)) and, through a police line-up, identified the driver as Jesse Tucker.  Doc. 126-2, p. 32 (Christopher Ramey Depo., p. 31).  Jesse Tucker later pled to charges relating to the stolen red Blazer.  Doc. 116, pp. 19-21, 39 (Jesse Tucker Depo., pp. 18:13-20:16, 39:5-17).

After conducting its investigation, on September 8, 2009, North Pointe advised Broad that it was denying his fire loss claim.  Doc. 113, p. 7 ("O'Brien Aff. ¶¶ 33-34); Doc. 138-1, pp. 1-4 (Sept. 8, 2009, denial letter).  In its September 8, 2009, denial letter, North Pointe stated in part that:

> North Pointe has determined that you have made knowingly false statements concerning material matters.  These false statements include, but are not limited, false statements relative to your financial condition at the time of the loss and your conduct prior to and after the fire.
>
> Additionally, there is circumstantial evidence linking you to the incendiary fire, as well as evidence of the opportunity and motive for destroying the property.

Doc. 138-1, p. 1 (Sept. 8, 2009, denial letter); *see also* Doc. 113, p. 7 (O'Brien Aff. ¶ 34) (indicating that North Pointe's denial of coverage was based on "Plaintiff's material misrepresentations and that North Pointe justifiably believes that Plaintiff paid Todd Tucker in cash and cocaine to set fire to the property.").

On November 9, 2011, Broad filed this action.  Doc. 1.  On December 9, 2011, Defendant North Pointe answered Broad's Complaint (Doc. 6) and filed a third party complaint against Third Party Defendant Todd Tucker alleging that the fire and damages alleged in Broad's complaint were directly and proximately caused by the actions of Third Party Defendant Todd Tucker and seeking indemnification and/or contribution in the event that judgment is rendered against Defendant North Pointe (Doc. 5).  In its Motion for Summary Judgment, Defendant North Pointe seeks dismissal of Plaintiff John Broad's Complaint with prejudice.  Doc. 110, Doc. 111.  Defendant does not seek relief on its Third Party Complaint.

## II.  Summary Judgment Standard of Review

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment and provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56.  The movant "bears the initial responsibility of informing the district court of
the basis for its motion, identifying those portions of the pleadings, depositions, answers to
interrogatories, and admissions on file, together with affidavits, if any, which it believes
demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*¸477 U.S.
317, 323 (1986) (internal quotations omitted).

 After the moving party has carried its initial burden of showing that there are no genuine
issues of material fact in dispute, the burden shifts to the non-moving party.  *Matsushita Elec.
Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986).  "Inferences to be drawn from
the underlying facts . . . must be viewed in the light most favorable to the party opposing the
motion."  *Id.* at 587 (internal quotations and citations omitted).  However, the non-moving party
"must do more than simply show that there is some metaphysical doubt as to the material facts."
*Matsushita*, 475 U.S. at 586.  The non-moving party must present specific facts that demonstrate
there is genuine issue of material fact for trial.  *Matsushita,* 475 U.S. at 587.  "The 'mere
possibility' of a factual dispute is not enough."  *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th
Cir. 19*86).  "Only disputes over facts that might affect the outcome of the suit under the
governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty
Lobby, Inc.,* 477 U.S. 242, 248 (19*86).

 The Court's function is not to "weigh the evidence and determine the truth of the matter
but to determine whether there is genuine issue for trial."  *Anderson*, 477 U.S. at 249.  Thus, in
order to defeat a motion for summary judgment, the non-moving party must present "sufficient
evidence . . . for a jury to return a verdict for that [non-moving] party."  *Id.* at 249-50; *see also*

*Latimore v. State Farm Fire and Casualty Company*, 2012 U.S. Dist. LEXIS 104129, * 10 (N.D. Ohio July 26, 2012).

### III. Analysis[12]

**A.     Breach of Contract Claim**

    **1.      Summary of Parties' Arguments**

With respect to Broad's breach of contract claim, Defendant argues that Broad made material misrepresentations during its investigation of his alleged loss, including material misrepresentations with respect to: (1) Broad's business and personal financial status; (2) the age and amount of the personal property lost in the fire; and (3) the circumstances surrounding the fire.  Doc. 111, pp. 13-20.  Thus, Defendant asserts that it is entitled to summary judgment because Broad made misrepresentations regarding material facts and therefore failed to satisfy conditions precedent for coverage, making the insurance policy void as a matter of law.  Doc. 111, pp. 12-20.

Broad challenges Defendant North Pointe's assertion that he made misrepresentations. He argues that a "mere mistake, exaggeration or excessive estimation will not amount to fraud" and that Defendant must demonstrate that he knew he was making a false statement at the time the statements were made.  Doc. 125, pp. 8-10.  Broad asserts that he provided all requested information to North Pointe and there is no evidence that North Pointe has suffered any prejudice.  Doc. 125, p. 8.  Broad  also argues that, because there is no warning in the insurance policy that a misstatement would render the policy void from its inception, Defendant cannot seek to avoid the insurance policy as being *void ab initio*.  Doc. 125, p. 8.

---

[12] Neither party disputes that, since the insurance policy was issued in Ohio, Ohio substantive law controls.  *See Equitable Life Assur. Soc. of U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998) (discussing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938) in the context of diversity actions).

12

2.      **Insurance Policy**

The insurance policy states in relevant part:

COMMERCIAL PROPERTY CONDITIONS

The Coverage Part is subject to the following conditions, the Common Policy conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

A.  CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time.  It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1.  This Coverage Part;
2.  The Covered Property;
3.  Your interest in the Covered Property; or
4.  A claim under this Coverage Part.

\*\*\*

D.  LEGAL ACTION AGINST US

No one may bring a legal action against us under this Coverage Part unless:

1.  There has been full compliance with all of the terms of this Coverage Part; and
2.  The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

Doc. 113, p. 85.

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

\*\*\*

E. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

\*\*\*

3.  Duties In The Event Of Loss Or Damage

a.  You must see that the following are done in the event of loss or damage to Covered Property:

***

(5)  At our request, give us complete inventories of the damaged and undamaged property.  Include quantities, costs, values and amount of loss claimed.

Doc. 113, pp. 65, 79.

CAUSE OF LOSS – SPECIAL FORM

***

B.  Exclusions

3.  We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

***

h.  Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1)  Acting alone or in collusion with others; or
(2)  Whether or not occurring during the hours of employment.

Doc. 113, pp. 89, 91.

### 3.  Concealment/Fraud Clauses in Ohio

In Ohio, concealment or fraud clauses are fully enforceable.  *Latimore v. State Farm Fire and Casualty Company*, 2012 U.S. Dist. LEXIS 104129, * 10 (N.D. Ohio July 26, 2012); *Taylor v. State Farm Fire & Casualty*, 2012 WL 1643877, * 3 (N.D. Ohio May 10, 2012); *Rainer v. Century Surety Ins. Co.*, 1990 Ohio App. LEXIS 2504, * 14 (4th Dist. 1990).  "[I]t is not necessary that the statements of the insured be under oath for the defense of fraud or material misrepresentation to apply."  *Parker v. State Farm & Cas. Co.*, 1988 WL 1058394, * 5 (N.D. Ohio Nov. 4, 1988).  In apparent reliance on *Hartford Fire Ins. Co. v. Cincinnati Ice Mfg. &*

*Cold Storage Co.*, 9 Ohio App. 403, 30 Ohio C.D. 167 (Ohio App. 1st Dist. 1918), Broad argues

that "[a] mere mistake, exaggeration or excessive estimation will not amount to fraud." Doc. 125,

p. 8.  However, Broad overstates the import of *Hartford*.  The court in *Hartford* stated that "a

mere innocent mistake will not amount to fraud or false swearing within the provisions of the

policy." *Hartford*, 20 Ohio C.D. 167, *171 (finding no evidence of fraud but indicating that

"[u]ndoubtedly a provision in a policy avoiding liability under it for fraud or false swearing

occurring in the proofs of loss is upheld and constitutes a complete bar to any recovery under the

policy.").  It did not state that exaggeration or excessive estimation cannot amount to fraud.  Nor,

as Broad suggests, did the court in *Hartford* state that an insurer bears the burden of proving the

insured's state of mind.

       To void a contract due to fraud or concealment, a misrepresentation must be material.

*McCurdy v. Hanover Fire & Cas. Ins. Co.*, 2013 WL 4050909, * 3 (N.D. Ohio Aug. 9, 2013).

While "[t]he materiality of a misrepresentation is a mixed question of law and fact that under

most circumstances should be determined by the trier of fact . . . materiality can be decided as a

matter of law if reasonable minds could not differ on the question."  *Abon Ltd. v. Transcon Ins.*,

2005 Ohio 3052, 2005 WL 1414486, * 13 (Ohio App. 2005) (internal quotations and citations

omitted); *see also Parker*, 1988 WL 1058394, * 5 (indicating that "[m]ateriality is a mixed

question of law and fact which can be decided as a matter of law if reasonable minds could not

differ on the question.") "A misrepresentation will be considered material if a reasonable

insurance company, in determining its course of action, would attach importance to the fact

misrepresented." *Latimore*, 2012 U.S. Dist. LEXIS 104129, * 12 (quoting *Abon*, 2005 Ohio

3052, 2005 WL 1414486, * 13); *Taylor*, 2012 WL 1643877, * 3 (also quoting *Abon*, 2005 WL

1414486, * 13).  "Most courts have construed materiality broadly, emphasizing that the subject

of the misrepresentation need not ultimately prove to be significant to the disposition of the claim, so long as it was reasonably relevant to the insurer's investigation at the time." *Abon*, 2005 WL 1414486, * 13; *see also McCurdy*, 2013 WL 4050909, * 3.

Misrepresentations regarding an insured's financial status are material. *Abon¸* 2005 WL 1414486, * 13; *see also Latimore*, 2012 U.S. Dist. LEXIS 104129, * 20-21; *see also Taylor*, 2012 WL 1643877, * 3 (citing *Parker*, 1988 WL 1058394 and indicating that financial status was material to an insured's potential motive for causing a fire). Misrepresentations regarding the value of property lost in a fire are also considered material misrepresentations. *Latimore*, 2012 U.S. Dist. LEXIS 104129, * 20-21; *see also Taylor*, 2012 WL 1643877, * 4; *see also Parker*, 1988 WL 1058394, * 4 ("[s]tatements by an insured misrepresenting the extent of loss, by overstating the value of lost property, are clearly material since they affect the extent of the insurer's obligation to pay for a claimed loss."). Misrepresentations concerning the cause of a fire are material as well. *Abon*, 2005 WL 1414486, * 13.

Broad does not directly dispute the applicability of the above law but, in reliance upon *Allstate Ins. Co. v. Boggs*, 27 Ohio St.2d 216 (1971), argues that, because there is no warning in the insurance policy that a misstatement would render the policy void from its inception, Defendant cannot seek to avoid the insurance policy as being *void ab initio*. Doc. 125, p. 8. Broad's argument is misplaced because Defendant is not claiming that the insurance policy was *void ab initio*. Doc. 137, p. 3, FN 2. Further, in *Allstate v. Boggs*, the court dealt with misrepresentations in an insurance *application*. However, Defendant does not seek summary judgment based on alleged misrepresentations in the insurance application. Rather, Defendant asserts that Broad made misrepresentations during the claims *investigation*. Doc. 137, p. 3; *see also* Doc. 126-5, p. 35 (O'Brien Depo., p. 136:19-22).

In light of the foregoing, if there are no genuine issues of material fact as to whether Broad  made misrepresentations with respect to one or more material matters, summary judgment in favor of Defendant is appropriate.  Accordingly, a review of the alleged misrepresentations is in order.

**4.    There are no genuine issues of material fact with respect to whether Broad made material misrepresentations regarding personal property lost in the fire and the financial condition of his business**

**a.  Alleged misrepresentations regarding the age and amount of personal property lost in the fire**

Defendant asserts that Broad made material misrepresentations concerning both the *age* and *amount* of personal property claimed and thus overstated the value of the claimed loss.  Doc. 111, pp. 17-18; Doc. 137, pp. 4-5.

**i.  Alleged misrepresentations regarding the age of the personal property**

The insurance policy is an Actual Cash Value ("ACV") Policy, not a replacement cost policy.  Doc. 113, p. 2, ¶ 7 (O'Brien Aff.); Doc. 113, p. 69, 81 (insurance policy); Doc. 120, p. 146 (Semegen Depo., p. 145:21-24).  Under an ACV policy, "each item claimed as a total loss receives an adjustment which evaluates the item's value accounting for its age, obsolescence, physical condition and its economic/market value at the time of the loss."  Doc. 113, p. 2 (O'Brien Aff., ¶ 7).  When determining the ACV of an item, there is a deduction made for depreciation.  Doc. 120, pp. 115, 241 (Semegen Depo., pp. 114:17-22, 240:3-6).  In contrast, a replacement cost policy "provides for a complete reimbursement for the cost of a new Replacement item."  Doc. 113, p. 2 (O'Brien Aff., ¶ 7); Doc. 120, p. 146 (Semegen Depo., p. 145:21-22).  Broad's choice of an ACV policy reduced his premiums.  Doc. 113, p. 2 (O'Brien Aff., ¶ 7).

At the time of the fire loss, Broad did not have receipts for most items of personal property.  Doc. 115, p. 159 (Broad Depo., p. 158) (Broad indicating he told Semegen he did not have receipts); Doc. 120, p. 130 (Semegen Depo., p. 129 (Semegen indicating that he did not have receipts to prove the age of the personal property)).   During his EUO, Broad confirmed that the personal property list submitted by his public adjuster was accurate and that his claimed loss was in the amount stated in that statement of loss.  Doc. 113, pp. 184-185 (EUO, pp. 153:6 – 154:19).  In his statement of loss, Broad  reported that the replacement value of the business personal property was $131,397.19 and that the ACV of the business personal property was $97,021.23.[13]  Doc. 113, p. 248 (EUO, Exhibit N).   In calculating the ACV for the business personal property, Broad deducted $34,375.96 from the replacement cost value to account for depreciation.  Doc. 113, p. 248 (EUO, Exhibit N).   With respect to the personal property of others, in his statement of loss, Broad reported that the replacement value was $8,679.81 and the ACV was $6,479.20.[14]  Doc. 113, p. 248 (EUO, Exhibit N).  In calculating the ACV for the personal property of others, Broad deducted $2,200.61 from the replacement cost value to account for depreciation.  Doc. 113, p. 248 (EUO, Exhibit N).

On the business personal property and personal property of others inventories, Broad represented that the age of all items was one year or less.  Doc.  113, pp. 257-276 (EUO, Exhibits P & Q).  However, during his EUO, Broad admitted that items he claimed to be less than one year old were in fact older than one year.  Doc. 113, p. 185 (EUO, p. 156:16-21) (admitting that some of the items were from his old garage); Doc. 113, p. 186 (EUO, pp. 158:24-160:7) (admitting that some of the ages identified for the items were not accurate); Doc. 115, p. 179

---

[13] Plaintiff's actual claim amount for the business personal property was $90,000.00, the limit of liability for business personal property under the insurance policy.  Doc. 113, p. 248 (EUO, Exhibit N).

[14] Plaintiff's actual claim amount for the personal property of others was $2,500.00, the limit of liability for personal property of others under the insurance policy.  Doc. 113, p. 248 (EUO, Exhibit N).

(Broad Depo. p. 178) (admitting that it was possible that an item claimed to be less than a year old could in fact be five years old).  Defendant asserts that the above evidence demonstrates that Broad misrepresented the age of the personal property when seeking coverage under his insurance policy.[15]

As discussed above, in responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  The non-moving party must present specific facts that demonstrate there is a genuine issue of material fact for trial.  *Matsushita*, 475 U.S. at 587.

Broad does not dispute that he misrepresented the ages of a number of items of personal property.  Instead, he asserts that North Pointe "presented absolutely no authority in support of its proposition that a dispute as to the age of personal property is a basis for the denying a claim in its entirety or voiding an entire insurance policy" and asserts that "the age of the personal property . . . was a matter to be adjusted between the parties."  Doc. 125, p. 10.  Thus, Broad appears to argue that statements regarding the age of personal property are not material and therefore, even if he made misrepresentations, those misrepresentations would not warrant the granting of summary judgment.  Alternatively, his argument suggests the novel proposition that an insured may deliberately misstate the age of personal property as a negotiating tactic without running afoul of an ACV policy's fraud/misrepresentation clause.  There is no authority to support that position.  However, there is ample authority to support Defendant's position that

---

[15] Defendant North Pointe also argues that a review of Plaintiff's financial condition prior to the loss, including a review of Plaintiff's 2008 tax returns, demonstrates that Plaintiff would not have been able to purchase the items contained within his statement of loss during the one year period prior to the loss.  Doc. 111, p. 17 (relying on Doc. 111-3, Affidavit of Timothy Hefty, ¶¶ 8-9).  In response, Plaintiff does not offer an explanation for how he acquired personal property having a replacement value of $131,397.19 within one year of the fire.  To the extent that Plaintiff would argue that he used the approximate $37,000.00 in insurance proceeds paid to Plaintiff following his October 2008 vandalism claim, such amount is much less than the amount of personal property claimed and Plaintiff said that those funds were used not just to buy tools but to repair his business premises.  Doc. 115, p. 167 (Broad Depo., pp. 166-167); Doc. 125-2 (Broad Aff. ¶19).

misrepresentations that are related to the value of property lost are material.  Doc. 111, p. 15
(relying on *Latimore*, 2012 U.S. Dist. LEXIS 104129).   Furthermore, as indicated by both Lester
O'Brien, Defendant's claims adjuster, and Broad's own public adjuster, the age of personal
property is an important, i.e., material, factor when determining the actual cash value of items.
*See* Doc. 120, pp. 116, 124, 128-129 (Semegen Depo., pp. 115, 123, 127-128 (indicating that age
is a consideration when determining what depreciation factor to apply to an item when valuing a
claim); Doc. 113, pp. 2, 6-7 (O'Brien Aff. ¶¶ 7, 32 (indicating that, under an actual cash value
policy, the age of an item is a consideration when determining the value at the time of the loss
and is material to amounts that the insurer would be obligated to pay under the policy); *see also*
Doc. 111-1 (Sitler Aff. ¶¶ 20, 22).

> ### ii.   Alleged misrepresentations regarding the amount of the personal property

Defendant also argues that Broad misrepresented the amount of personal property that he
claimed was lost in the fire.  Doc. 111, p. 18.  Semegen testified that Broad provided the
information that Semegen used to compile the personal property inventories.  Doc. 111, p. 18;
Doc. 120, pp. 48-49, 52, 105, 219 (Semegen Depo., pp. 47:21-48:1-6, 51:1, 104:12-15, 218:17-
25).  As part of his support for his personal property claim, Broad submitted photographs of the
personal property listed on the inventories.  Doc. 120, pp. 102-105 (Semegen Depo., pp. 102:13-
104:1-4; 104:16-25).   The personal property inventories identified the specific photograph(s)
that purportedly showed each item.  Doc. 120, pp. 104-105 (Semegen Depo., pp. 103:23-104:4).
However, in many instances, the photographs failed to establish the existence of the personal
property listed on the inventory list.   For example, on several occasions, when asked about
specific items of personal property, Semegen admitted that items represented to be shown in
specific photographs were not in fact shown there.  Doc. 120, pp. 171-172, 185, 187-188, 198

(Semegen Depo., pp. 170:21 – 171:18, 184:5-12, 186:17 – 187:16, 197:11-20).  Thus, Defendant argues that, in submitting his claim, Broad misrepresented the amount of personal property lost in the fire.  Doc. 111, p. 18; Doc. 137, p.4.

In response, Broad asserts that Defendant's claim that he misrepresented the amount of personal property is "absolutely contradicted by the Affidavit of Alex Semegen."[16]  Doc. 125, p. 9; Doc. 125-9.   Broad fails to identify which portions of Semegen's affidavit absolutely contradict facts presented by Defendant.  To the extent that Broad is relying on Semegen's statement that, "[a]t no time was there ever any misrepresentation or attempt to avoid disclosing . . . the nature and extent of the business personal property," (Doc. 125-9 (Semegen Aff., ¶ 12), that statement is a mere conclusion and is insufficient to create a genuine issue of material fact.  See *Smith v. County of Hamilton*, 34 Fed. Appx. 450, 455 (6th Cir. 2002) (citing *Doren v. Battle Creek Health Systems*, 187 F.3d 595, 598-599 (6th Cir. 1999); *Wade v. Knoxville Utilities Board*, 259 F.3d 452, 463 (6th Cir. 2001)) (conclusory statements were insufficient to defeat summary judgment); *see also Rodgers v. City of Cleveland*, 2006 WL 2371981, * 7 (N.D. Ohio Aug. 15, 2006) (citing cases supporting the proposition that conclusory allegations without supporting factual detail are not sufficient to create a genuine issue of material fact) (internal citations omitted).   Moreover, Broad does not state, argue, or present evidence that Semegen was incorrect when he testified during his deposition, on more than one occasion, that personal property identified by Broad on his inventories as being in certain photographs was not in fact shown in those photographs.

---

[16] Plaintiff also appears to argue that a genuine issue of material fact exists as to whether Plaintiff misrepresented the amount of personal property lost in the fire because North Pointe's claims adjuster O'Brien did not take photographs of the personal property.   The undersigned is not persuaded that the failure of the adjuster to take photographs is sufficient to create a genuine issue of material fact with respect whether Plaintiff misrepresented the extent of his loss.

Broad attempts to distance himself from his proof of loss and personal property inventories by relying upon Semegen's statements that Semegen "prepared and presented to North Pointe Insurance Company the Statement of Loss with the assistance of John Broad's daughter and a friend of John Broad's" (Doc. 125-9 (Semegen Aff., ¶ 18)) and that "John Broad did not have a great deal of knowledge as to the financial aspects of the used car business or the specifics as to the business personal property," (Doc. 125-9 (Semegen Aff., ¶ 8).  That effort is unsuccessful.  Semegen's affidavit does not say Broad was not involved and it is clear that Semegen and others were acting on Broad's behalf.  Moreover, Broad's Complaint states, "Plaintiff . . . made and filed duly sworn proofs of loss and presented same to Defendant." Doc. 1, ¶6.  Also, Broad confirmed in his EUO that the personal property list submitted by his public adjuster was accurate and that his claimed loss was in the amount stated in that statement of loss (Doc. 113, pp. 184-185 (EUO, pp. 153:6 – 154:19)).

### b.  Alleged misrepresentations regarding the financial condition of the business

Defendant asserts that Broad made misrepresentations concerning the financial condition of his business at the time of the fire.  Doc. 111, pp. 16-17; Doc. 137, pp. 5-7.

At the time of his June 19, 2009, EUO, Broad had not filed his 2008 income tax returns but had requested an extension of time to file.[17]  Doc. 113, p. 187 (EUO, pp. 163:23 – 164:4); Doc. 113, p. 279 (EUO, Exhibit S – Request for Extension of Time).  While Broad could not state what his adjusted income was for 2008 when questioned during the EUO, on May 1, 2009, prior to the EUO, Broad submitted income and expense statements that encompassed business operations during 2008.  Doc. 113, p. 187 (EUO, p. 164); Doc. 113, pp. 280-283 (EUO, Exhibit T); Doc. 113, p. 332 (EUO, Exhibit BB – May 1, 2009, Letter from Semegen to Sitler

---

[17] Plaintiff's 2008 1040 income tax return is dated October 17, 2012.  Doc. 125-2, pp. 20-21.

forwarding information that Sitler requested from the insured).[18]  Broad's income statement

showed yearly projected income of $319,930.00.  Doc. 113, p. 280 (EUO, Exhibit T).  His

expense statement showed projected yearly expenses of $203,424.33.  Doc. 113, p. 283 (EUO,

Exhibit T).  The difference between those numbers, $116,505.67, would be the projected profit.

During his June 19, 2009, EUO, Sitler had Broad look at the income and expense

statements that he submitted[19] and asked Broad questions regarding those statements. Doc. 113,

pp. 188-189 (EUO, pp. 167-170); Doc. 113, pp. 280-283 (EUO, Exhibit T). Based on those

income and expense statements (Doc. 113, pp. 280-283 (EUO, Exhibit T)), Sitler specifically

asked Broad about his business profit in 2008 in the following exchange:

> Q.    And just looking at the expense, and I guess if you balance the expenses
>       with the income, wer're looking at about $100,000 in profit that you –
>       according to the calculations you would have made for 2008.  Does that
>       sound about right?
> A.    Probably so.
> Q.    Okay.
> A.    Or close. You see, that was just an average.  I mean, that's exactly what
>       spent at Adesa, at one place.
> Q.    $100,000?
> A.    I mean – what was it? $115,000 just the one place, buying cars.

Doc. 113, p. 189 (EUO, p. 170:1-13)

Notwithstanding Broad's May 1, 2009, submission of income and expense statements in

support of his insurance claim that showed a "projected" profit of approximately $100,000.00

and his June 19, 2009, EUO testimony wherein he indicated $100,000.00 in profit sounded

"about right" for 2008, additional records submitted by Broad thereafter contradicted that

claimed profit.  For example, Broad's 2008 income tax return showed a net profit of only

---

[18] Although the income and expense statements are titled "projected," they were submitted in response to a request for monthly income and expense statements for at least 12 months preceding the loss and were submitted to North Pointe on May 1, 2009, months after the 2008 year had closed.  Doc. 113, p. 332 (Nos. 10 and 11).

[19] Doc. 113, p. 188 (EUO, p. 167:10 – "Okay.  We are looking at Exhibit T.").

$11,256.00.[20] Doc. 125-2, p. 23 (2008 1040 income tax return, Schedule C – Profit or Loss from Business).

Broad does not present specific facts to refute Defendant's evidence that he misrepresented the financial condition of his business. Instead, Broad argues that a "plain reading" of the portion of his EUO testimony quoted above shows that North Pointe's attorney Sitler misinterpreted Broad's EUO testimony to mean that he was making $100,000.00 profit when Broad was instead talking about how much he spent on automobiles at auction (Adesa) to be resold. Doc. 125, p. 9. Broad's argument and citation to the EUO testimony is insufficient to create a genuine issue of material fact as to whether he misrepresented the financial condition of his business. Although Broad discussed the amount he spent on automobiles following his response to Sitler's question regarding profit, Sitler's question with respect to profit was clear and a reading of the transcript does not suggest that Broad did not understand Sitler's question. Nor does he dispute that, before his EUO testimony and four months after the close of calendar year 2008, when asked to provide monthly income and expense statements *for at least 12 months preceding the loss,* on May 1, 2009, he, through his retained public adjuster, submitted income and expense statements reflecting a projected net profit of more than $100,000.00, which was in fact substantially more than his actual profit of $11,256.00. Doc. 125-2, p. 23 (2008 1040 income tax return, Schedule C – Profit or Loss from Business).

Broad's argument that, because he cooperated and provided requested financial information, his misrepresentations were not relevant and/or that Defendant was not prejudiced

---

[20] Plaintiff also submitted additional information to support his business income from March 2008 through February 2009. Doc. 111-1 (Sitler Aff. ¶ 10). Defendant analyzed records from 2008 and asserts that those records do not support a profit of $100,000.00. Doc. 111-1 (Sitler Aff. ¶¶ 10, 15); Doc. 111-3 (Hefty Aff. ¶ 4). Plaintiff fails to rebut or offer evidence in response to Defendant's argument as to what its analysis of Plaintiff's 2008 documentation showed. Doc. 111, p. 16 (relying on Doc. 111-1 (Sitler Aff. ¶¶ 10, 15) and Doc. 111-3 (Hefty Aff. ¶ 4)

(Doc. 125, p. 8), is unpersuasive.  "Most courts have construed materiality broadly, emphasizing that the subject of the misrepresentation need not ultimately prove to be significant to the disposition of the claim, so long as it was reasonably relevant to the insurer's investigation at the time."  *Abon*, 2005 WL 1414486, * 13; *see also McCurdy*, 2013 WL 4050909, * 3.  Not only has Defendant stated that information regarding the age and amount of personal property and Broad's financial condition were relevant and material to its investigation (Doc. 113 (O'Brien Aff. ¶¶ 30-32)), case law supports the conclusion that Broad's misrepresentations regarding the value of property lost in a fire and misrepresentations regarding his financial status are material and that, under such circumstances, summary judgment is appropriate.  *See Latimore*, 2012 U.S. Dist. LEXIS 104129 (granting summary judgment in favor of the insurer based misrepresentations regarding financial condition and property lost in the fire); *see also Taylor*, 2012 WL 1643877 (same); *see also Parker*, 1988 WL 1058394, * 4 (granting directed verdict in favor of insurer in part based on misrepresentations regarding the insured's financial condition); *but see McCurdy*, 2013 WL 4050909 (denying insurer's and insured's motions for summary judgment in part because certain alleged misrepresentations were not shown to be material and because there were issues of fact regarding alleged misrepresentations with respect to a prior loss); *Taylor v. Fidelity National Ins. Co.*, 2012 WL 6027792 (N.D. Ohio Dec. 4, 2012) (denying insurer's motion for summary judgment because the court was unable to find as a matter of law that plaintiff's statements constituted material misrepresentations).

 As shown more fully above, Broad has failed to demonstrate the existence of a genuine issue of fact as to whether his misrepresentations with respect to the age and amount of the personal property lost in the fire and with respect to the financial condition of his business were material.  Nor has he argued or presented specific facts to demonstrate that the

misrepresentations were innocent mistakes or were not made with the intent to mislead or deceive North Pointe.[21]  Accordingly, the undersigned recommends that the Court grant summary judgment in favor of Defendant North Pointe on Plaintiff John Broad's breach of contract claim.  *See e.g., Parker*, 1988 WL 1058394, * 14 (indicating that "a directed verdict on the issue of whether material misrepresentations or concealment of material facts were intentionally made is proper if there is insufficient evidence presented to raise a controverted issue of fact for the jury"); *see also Taylor*, 2012 WL 1643877, *4 (in concluding that summary judgment in favor of defendant was appropriate based on plaintiffs' misrepresentations regarding the value of property lost or destroyed in a fire, the court noted that plaintiffs had offered no explanation or rationale for why they had claimed certain items in their personal property inventory form but later stated the opposite).

### 5. Alleged misrepresentations with respect to Broad's personal financial condition and circumstances surrounding the fire

Defendant North Pointe also asserts that there are no genuine issues of material fact with respect to whether Broad made misrepresentations with respect to his *personal* financial condition (Doc. 111, pp. 16-17; Doc. 137, pp. 6-7) and whether he made misrepresentations regarding the circumstances surrounding the fire.[22]  Doc. 111, pp. 19-20, Doc. 137, pp. 7-9. However, since the undersigned has determined that there is no genuine issue of material fact that Broad made material misrepresentations concerning the amount and age of the personal

---

[21] As discussed above, to the extent that Plaintiff relies upon Semegen's conclusory statement that there were no misrepresentations, that conclusory statement is insufficient to create a genuine issue of material fact.  *See e.g, Rodgers*, 2006 WL 2371981, * 7 (N.D. Ohio Aug. 15, 2006) (citing cases supporting the proposition that conclusory allegations without supporting factual detail are not sufficient to create a genuine issue of material fact) (internal citations omitted).

[22] As it relates to the circumstances surrounding the fire, Defendant asserts that: (1) Plaintiff denied knowing the alleged arsonist; (2) Plaintiff misrepresented that the alarm system was engaged the night of the fire; (3) Plaintiff misrepresented that the alarm went off the night of the fire; and (4) Plaintiff misrepresented that the alarm notified the alarm company.  Doc. 111, p. 19.

property and the financial condition of the business, it is not necessary to address the alleged misrepresentations regarding Broad's personal financial condition and circumstances surrounding the fire in order to conclude that Defendant is entitled to summary judgment on Broad's breach of contract claim. *See Taylor*, 2012 WL 1643877, *4 (having found that plaintiff had made multiple misrepresentations to defendant during the investigation it was not necessary to address other alleged misrepresentations).

The undersigned notes, however, that there appear to be some genuine issues of material fact with respect to whether Broad made misrepresentations concerning the circumstances of the fire. These include whether Broad misrepresented knowing or having dealt with Todd Tucker or Jesse Tucker and whether Broad misrepresented that he engaged the alarm at the Property prior to leaving on the evening of January 27, 2009. During his EUO, Broad did not unambiguously deny knowing Jesse Tucker. When asked whether he knew Jesse Tucker, Broad stated "I knew – I knew the family. You know, I knew his dad. I don't really know him. I know his dad from his name." Doc. 113, p. 174 (EUO, p. 110:12-16).

With respect to whether Broad misrepresented that he set the alarm, Defendant relies in part on the affidavit of Duglus Miller, owner of Be-Safe Fire & Security, Inc., who states that "On January 27, 2009, if the alarm was engaged, that is, turned on, and the front door was opened, Be-Safe would have received notification of such an event. Be-Safe did not receive a notification of any such event occurring at the Property on this date." Doc. 111, p. 19; Doc. 111-4 (Miller Aff. ¶ 6). However, in his affidavit, Miller suggests an alternative reason why Be-Safe may not have been notified. He states that, "since Be-Safe was not notified of the door being opened, either the Security System was not engaged *or* someone cut the telephone line from the Property to Be-Safe." Doc. 111-4 (Miller Aff. ¶ 7) (emphasis supplied). Moreover,

Miller's affidavit does not eliminate the possibility that the alarm was not working properly the night of the fire.[23]  Miller also states that the audible alarm signal would not engage unless the alarm was engaged (Doc. 111-4 (Miller Aff. ¶ 8)).  However, three other potential fact witnesses, Dolla Ramey, Michael Watson, and Ronald Abraham, have signed affidavits indicating that they heard an audible alarm coming from Broad's property during on January 27, 2009.  Doc. 125-3 (Watson Aff., ¶ 3); Doc. 125-4 (D. Ramey Aff. ¶ 3); Doc. 125-5 (Abraham Aff., ¶ 3).[24]

**B.      Bad Faith/Breach of Fiduciary Duty Claim**[25]

Broad alleges that North Pointe is subject to tort liability because it breached its fiduciary duty to act in good faith, i.e., acted in bad faith.  The Ohio Supreme Court has held that, "based on the relationship between an insurer and an insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured" and may be subject to tort liability if it breaches this duty.  *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276 (1983).   "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therfor."  *Taylor*, 2012 WL 1643877, *4 (quoting *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 554 (1994)).  However, "[m]ere refusal to pay insurance is not, in itself, conclusive of bad faith.  *Hoskins*, 6 Ohio St.3d at 277.

---

[23] Miller's affidavit merely establishes that the alarm was in "perfect working condition" in and around October 2008, three months before the fire.  Doc. 111-4 (Miller Aff., ¶ 4).  Miller's statement that the alarm was in working order on January 27, 2009, is based his 25 years of work experience in the alarm industry, not upon personal knowledge, observation, or testing of the alarm system at the Property.  Doc. 11-4 (Miller Aff., ¶ 5).

[24] As indicated above, Defendant's motion for summary judgment can be resolved without consideration of the Affidavits of Michael Watson, Dolla Ramey or Ronald Abraham and therefore Defendant's motion to strike those affidavits is moot.  The undersigned notes that, in the Offense or Incident Report made by Phifer, Michael Watson is listed as the person having reported the incident.  Doc. 115, p. 256 (Broad Depo., Exhibit 2).

[25] See FN 1 above.

As set forth above, Broad made material misrepresentations during North Pointe's investigation of his claim.  Accordingly, North Pointe was justified in denying the claim and cannot be said to have acted in bad faith.  *See Latimore*, 2012 U.S. Dist. LEXIS 104129, *23-24 (granting summary judgment on bad faith claim because an insured's numerous misrepresentations during an insurance claim investigation provided reasonable justification for the insurer's denial of the claim); *see also Taylor*, 2012 WL 1643877, *4  ("Where a policy does not cover a claim, it cannot be bad faith to refuse to cover it.").

For the reasons set forth above, the undersigned recommends that the Court grant summary judgment in favor of Defendant North Pointe on Plaintiff John Broad's bad faith claim.

## C.     Other claims

Since the undersigned has concluded that there was no breach of contract or bad faith by North Pointe, to the extent that Broad has asserted a claim for emotional distress,[26] the undersigned also recommends that the Court grant summary judgment in favor of Defendant North Pointe on that claim.

---

[26] See FN 2 above.

## IV. Conclusion

For the reasons set forth herein, the undersigned recommends that the Court grant summary judgment in favor of Defendant North Pointe and dismiss Plaintiff John Broad's Complaint with prejudice.


Dated: January 16, 2014

_____
KATHLEEN B. BURKE
United States Magistrate Judge


## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).