# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN BROAD dba Broad Car Sales & Service, | ) ) ) | CASE NO.  5:11CV2422 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | MEMORANDUM OPINION |
| NORTH POINTE INSURANCE CO., | ) ) ) | |
| DEFENDANT- THIRD-PARTY PLAINTIFF, | ) ) ) ) | |
| vs. | ) ) ) | |
| TODD A. TUCKER, | ) ) ) | |
| THIRD-PARTY DEFENDANT. | ) ) | |

On January 16, 2014, Magistrate Judge Kathleen B. Burke filed a Report and Recommendation ("R&R") recommending that the Court grant the motion of defendant/third-party plaintiff North Pointe Insurance Co. ("North Pointe") for summary judgment with respect to plaintiff's complaint. (Doc. No. 139.) Plaintiff John Broad ("Broad") has filed timely objections to the R&R (Doc. No. 140), and North Pointe has filed a response (Doc. No. 141).

Upon *de novo* review of those portions of the R&R to which Broad has made objection, this Court hereby **ACCEPTS**, in part, the R&R of the magistrate judge.

As set forth more fully below, North Pointe's motion for summary judgment (Doc. No. 110) is **GRANTED**.

This Court's review of the magistrate judge's R&R is governed by 28 U.S.C. § 636(b), which requires a *de novo* review as to those portions of the document to which objection is made. Because Broad objects only to those portions of the R&R that recommend a finding that North Pointe did not, as a matter of law, breach its contract with Broad or act in bad faith in denying his insurance claim, the remainder of the R&R—including its account of the factual and procedural history of the case—is hereby accepted as written. Thus, the Court will only provide a brief review of the facts and procedural posture sufficient to adequately frame the issues presented by Broad's objections.

## I.     BACKGROUND

All of the facts set forth herein are either undisputed or presented in a light most favorable to Broad. On March 21, 2008, North Pointe issued Broad an "actual cash value" insurance policy covering his business property located in Canton, Ohio. (Complaint, Doc. No. 1 at ¶ 4; Affidavit of Lester O'Brien, Doc. No. 113 at ¶¶ 6-7, Policy, Ex. A beginning at 733.) The policy provided coverage for the dwelling ($140,000), personal business property ($90,000), personal effects and property of others ($2,500), outdoor property ($1,000), and debris removal ($10,000). (Doc. No. 1 at ¶ 4; Common Policy Declarations, Doc. No. 1-1 at 5.)

On January 22, 2009, North Pointe informed Broad that it would not renew the policy, which was set to expire on March 21, 2009, due to Broad's extensive loss history. (Doc. No. 113 at ¶ 9.) Five days later, on January 27, 2009, a fire destroyed

2

the property. (Doc. No. 1 at ¶ 5.) Broad submitted a claim with North Pointe for the destruction of the real property. He also sought compensation for personal business property he maintained was destroyed in the fire. (Doc. No. 1 at ¶¶ 5-6; Doc. No. 113 at ¶ 16, Ex. D at 848; Claim Presentation, Doc. No. 120-1 beginning at 2145.) The total amount claimed by Broad for the fire loss was $243,500. (Doc. No. 113 at ¶ 16.) As part of his claim, Broad—through Alex Semegen, a public adjuster—submitted a Proof of Loss statement and inventories that listed the personal property alleged to have been destroyed. (*Id*., Ex. D at 848, Ex. E beginning at 849.) Broad subsequently submitted to an examination under oath ("EUO") on June 19, 2009, wherein he was questioned about his claim, and, in particular, the circumstances surrounding the fire, his business and personal finances, and the age and value of the personal items he claimed were destroyed. (*Id*. at ¶ 17, Transcript of EUO, Ex. F beginning at 870; Affidavit of Martin Sitler, Doc. No. 111-1 at ¶ 9.)

As part of its investigation, North Pointe retained an origin and cause expert and an electrical engineer to examine the circumstances surrounding the fire. (Doc. No. 113 at ¶¶ 11-12.) The cause and origin expert, in conjunction with the electrical engineer, determined that the cause of the fire was arson. (*Id*. at ¶¶ 11-21, 19, 34.) After further investigation, North Pointe denied Broad's claim, citing its determination that Broad made material misrepresentations regarding his financial condition and the business property items alleged to have been destroyed. (*Id.* at ¶ 34, Ex. A beginning at 733.) In its September 8, 2009 letter to Broad denying the claim, North Pointe also represented that it "justifiably believe[d]" that Broad had hired third-party defendant Todd Tucker to set fire to the property. (*Id*. at ¶ 34.)

3

On November 9, 2011, Broad filed the present lawsuit. While it is not entirely clear from his complaint, Broad appears to have raised claims for breach of contract, breach of fiduciary duty/bad faith denial of an insurance claim, and intentional infliction of emotional distress.[1] (Doc. No. 1.) North Pointe filed a third party complaint against Tucker seeking indemnification and contribution in the event that Broad obtains a judgment against North Pointe. (Doc. No. 5.)

After the close of discovery, North Pointe filed a motion for summary judgment, seeking dismissal of all of Broad's claims. Much of Broad's opposition to the motion was focused on demonstrating genuine issues of material fact as to his involvement in the setting of the fire.[2] Broad offered the affidavits of several individuals who essentially corroborated his version of the events relating to the fire, and he attempted to discredit the testimony of other individuals whom North Pointe relied upon in denying Broad's insurance claim.

In her R&R, the magistrate judge acknowledged that there are genuine issues of material facts going to the question of whether Broad played a role in the arson of his property. (Doc. No. 139 at 3825.) Nonetheless, she recommended a determination

---

[1] It is possible that the breach of contract and bad faith claims are merged. This would not, however, change the analysis as to whether Broad engaged in conduct that had the effect of voiding the policy.

[2] North Pointe filed a motion to strike the affidavits of Michael Watson, Dolla Ramey, and Ronald Abraham (Doc. No. 130), and a motion to exclude the opinion testimony of Dimitrios Pousoulides (Doc. No. 123). The magistrate judge recommended that these motions be denied as moot, based upon her finding that, even if the assertions contained in these documents were taken into consideration, Broad's opposition to summary judgment would still fall short. (Doc. No. 139 at 3801-02.) The magistrate judge also recommended that the Court grant North Pointe's motion for leave to file amended deposition certification pages (Doc. No. 136), and deny North Pointe's motion to strike Broad's response to North Pointe's motion to exclude opinion testimony from Dimitrios Pousoulides (Doc. No. 128). Neither party objected to these recommendations, and the Court ACCEPTS them and ADOPTS them as the rulings of this Court.

that North Pointe was entitled to judgment, as a matter of law, on Broad's breach of contract claim. Specifically, she concluded that undisputed evidence demonstrated that Broad had made material misrepresentations to North Pointe during the investigation of his claim, and that these misrepresentations voided the policy. (Doc. No. 139 at 3823.) Finding no basis for a contract breach, she concluded that summary judgment was also appropriate on the remaining claims, upon a determination that these were ancillary claims. (*Id*. at 3827.).

Broad objects to these recommendations, insisting that the magistrate judge "was incorrect as a matter of law in determining that there are no genuine issues of material fact as to whether [he] made material misrepresentations . . . ." (Doc. No. 140 at 3829.) According to Broad, the magistrate judge impermissibly weighed the evidence at the summary judgment stage in arriving at her recommendations. (*Id*. at 3830.)

## II.        STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

An opposing party may not rely merely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R.

Civ. P. 56(c)(4). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943-44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863

F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

**III.     DISCUSSION**

The policy in effect at the time of the 2009 fire provided that:

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1.     This Coverage Part;
2.     The Covered Property;
3.     Your interest in the Covered Property; or
4.     A claim under this Coverage Part.

(Doc. No. 113 at 809.)

"Concealment or fraud clauses are fully enforceable under Ohio law." *Taylor v. State Farm Fire & Cas. Co*., No. 3:11-CV-1714, 2012 WL 1643877, at *3 (N.D. Ohio May 10, 2012) (citing *Smith v. Allstate Indem. Co*., 304 F. App'x 430, 431-32 (6th Cir. 2008)); *see also Rainer v. Century Sur. Ins.* Co., No. 1565, 1990 WL 85207, at *5 (Ohio Ct. App. June 22, 1990) (citing *Hartford Fire Ins. Co. v. Cincinnati Ice Mfg. & Cold Storage Co*., 9 Ohio App. 403, 408 (Ohio Ct. App. 1918)). Under a concealment clause, an insurer may void a contract if it finds that the insured made a material misrepresentation. *McCurdy v. Hanover Fire & Cas. Ins. Co*., Case No. 4:12CV550, 2013 WL 4050909, at *3 (N.D. Ohio Aug. 9, 2013) (further cite omitted).

"[A] misrepresentation will be considered material if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented." *Latimore v. State Farm Fire and* Cas., *Co*., No. 1:11CV272, 2012 WL 3061263, at *4 (N.D. Ohio July 26, 2012) (internal quote omitted); *see Parker v. State Farm Fire & Cas. Co*., No. C87-2683, 1988 WL 1058394, at *4 (N.D. Ohio Nov. 4, 1988) ("[A] misrepresentation is material when it pertains to a fact 'that significantly affects the rights or obligations of the insurer.'") (quoting *Mamco, Inc. v. Am. Employers Ins. Co*., 736 F.2d 187, 190 n.6 (5th Cir. 1984)). "The subject of the misrepresentation need not ultimately prove to be significant to the disposition of the claim, so long as it was reasonably relevant to the insurer's investigation at the time." *McCurdy*, 2013 WL 4050909, at *3 (internal quote and cite omitted). Additionally, "it is not necessary that the statements of the insured be under oath for the defense of fraud or material misrepresentation to apply." *Parker*, 1988 WL 1058394, at *5.

"The materiality of a misrepresentation is a mixed question of law and fact that under most circumstances should be determined by the trier of fact." *Abon, Ltd. v. Transcon. Ins. Co*., No. 2004-CA-0029, 2005 WL 1414486, at *13 (Ohio Ct. App. June 16, 2005). However, summary judgment in favor of the insurer is appropriate when the undisputed evidence demonstrates that the insured's statements as a matter of law constitute material misrepresentations. *Id.* at *13 ("materiality 'can be decided as a matter of law if reasonable minds could not differ on the question'") (quoting *Long v. Ins. Co. of N. Am*., 670 F.2d 930, 934 (10th Cir. 1982)); *see, e.g., Latimore*, 2012 WL 3061263; *Taylor*, 2012 WL 1643877.

The magistrate judge determined, as a matter of law, that Broad made

multiple misrepresentations to North Pointe during the claim process, which can be grouped together into three categories: (1) misrepresentations regarding the age of the personal property destroyed; (2) misrepresentations regarding the amount of personal property destroyed; and (3) misrepresentations regarding Broad's business's financial condition. Broad generally challenges all of these determinations, and specifically highlights several instances where he believes that he has identified genuine issues of material fact that should be submitted to a jury.

### A. *Misrepresentations Regarding the Amount of Personal Property Destroyed*

The magistrate judge found that Broad made—and others made on his behalf—material misrepresentations regarding the amount of personal property claimed as destroyed in the fire. In reaching this conclusion, she relied on the deposition testimony of plaintiff's public adjuster, Alex Semegen, whom plaintiff engaged to assist him in submitting his claim to North Pointe. (Affidavit of Alex Semegen, Doc. No. 140-1 at ¶ 8.) Semegen's claim presentation to North Pointe included—among other things—a Statement of Loss, building diagrams, repair estimates, personal property inventories, and photographs of the real and personal property. (*Id.*, Ex. 3 beginning at 2145.)

Of significance to plaintiff's objection are the personal property inventories prepared by Semegen and the photographs of the personal property. The inventories were presented in the form of spreadsheets that contained details of each personal property item claimed, including: a description, the age, and a number that corresponded to a photograph that was submitted purporting to depict the item. (Doc. No. 120-1, Ex. 3 [inventories beginning at 2189, photographs beginning at 2210].) At his

deposition, Semegen testified that plaintiff had few receipts for the personal property that was damaged in the fire, and that photographs were taken of the damaged or destroyed items to prove their existence. (Deposition of Alex Semegen, Doc. No. 120 at 1950, 1954, 1956, 1980.)

According to the R&R, "in many instances, the photographs failed to establish the existence of the personal property listed on the inventory list. For example, on several occasions, when asked about specific items of personal property, Semegen admitted that items represented to be shown in specific photographs were not in fact shown there." (Doc. No. 139 at 3818 [citing Doc. No. 120 at 2027-28, 2041, 2043-44, 2054].) These admissions, the magistrate judge reasoned, constitute evidence of material misrepresentations. (*Id*. at 3823.)

Broad takes issue with this reasoning, insisting that a fair reading of Semegen's deposition testimony supports a contrary conclusion that the photographs are merely representative of the property that was claimed in the inventories. He cites to Semegen's affidavit, offered in opposition to summary judgment, wherein Semegen explains:

> My company photographed the contents of the building following the fire depicting *examples* of all the personal property items that were claimed in the Statement of Loss; all of which photographs were submitted to [North Pointe] as part of the Statement of Loss.

(Affidavit of Alex Semegen, Doc. No. 140-1 at ¶ 9 [emphasis added]).

Plaintiff's explanation that the photographs were offered as examples of the types of items claimed is not borne out by the record. Each item claimed had its own line on the spreadsheet, and each line, in turn, identified a corresponding photograph.

10

Semegen's deposition confirms that the photographs were linked to specific line items. For example, Semegen was asked:

> Q. Line 39 of the claim, Exhibit 7, states that paragraph—I'm sorry—states that photograph 110 shows a master-cooled charging system, doesn't it? Isn't that what the claim form shows?
>
> A. Yes.
>
> Q. But there is no master-cooled charging system set forth in photograph 110; is there?
>
> A. Not that I see, no.

(Doc. No. 120 at 2042-43.) Sticking with the same photograph, Semegen was asked:

> Q. Let's look at row 103 of Exhibit 7 as well. Are you on line 103 of Exhibit 7?
>
> A. Yes.
>
> Q. That suggests that photograph 110 is also evidence of the existence of jump start sets, two of them, correct?
>
> A. Yes.
>
> Q. With 25 feet of line, right?
>
> A. Right.
>
> Q. Clearly, that is not in photo 110, is it?
>
> A. I mean, not that I can see, pick up.

(*Id*. at 2043-44.)

While Semegen gratuitously peppered his deposition testimony with suggestions that someone else might be able to discern the missing items from the various photographs identified on the spreadsheets, one thing is clear: the photographs were not

offered as examples of the types of items claimed, they were offered to substantiate each item.[3] To the extent that Semegen's post-summary judgment affidavit contradicts his deposition testimony, the Court shall disregard it. It is well settled that "a party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier testimony."[4] *Penny v. United Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997); *see Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 448 (6th Cir. 2008) (same); *see, e.g., Moore v. Lafayette Life Ins. Co*., 458 F.3d 416, 434 (6th Cir. 2006) (affidavit properly excluded where it contradicted earlier deposition testimony).

The inventories identified particular items that were alleged to have been lost in the fire and represented that specific photographs depicted these items. These inventories constituted representations made on plaintiff's behalf as to damages he sustained, and North Pointe has come forward with uncontroverted competent evidence

---

[3] Semegen did testify that the claim presentation included photographs styled "personal property photographs" that Semegen said were "generalized photos" that did not necessarily "tie-in with the spreadsheets[.]" (*Id*. at 1948-49.) However, he also testified that the "thumbnail" photographs, offered in a section entitled "Business Personal Property Photographs Support" were offered to provide "specific support to show the existence of the personal property[.]" (*Id*. at 1948-49.) The "thumbnail" photographs tied-in with the personal property inventories, purported to depict each item claimed, and were the source of the misrepresentations.

[4] Plaintiff also maintains that his public adjuster should not be held to the representations made in the claim presentation regarding the photographs because he did not personally take the photographs and was "not necessarily familiar" with the items they depicted. He also charges that North Pointe "never bothered to photograph themselves." (Doc. No. 140 at 3837.) However, Semegen prepared the claim presentation, testified that he was familiar with the photographs and that the photographs were offered to provide specific support for the existence of the personal property. (Doc. No. 120 at 1948-49, 1956.) Broad, himself, confirmed Semegen's knowledge. In his EUO, Broad claimed ignorance of the personal property loss items, repeatedly underscoring the fact that Semegen was the one who compiled the claim. (Deposition of John Broad, Doc. No. 115 at 1232 [I can't remember . . . . [Semegen] made [the claim presentation] up."], 1234 [similar], 1244 [similar].) Of course, if, as Semegen suggested, someone else might be able to demonstrate that the photographic representations were true, Broad still had a duty to come forward with competent Rule 56 evidence to oppose North Pointe's well supported motion for summary judgment. *See generally Fulson*, 801 F. Supp. at 4; *see, e.g., Moore*, 458 F.3d at 434. Broad failed to do so.

12

that these representations were untrue. False answers regarding items lost in a fire constitute material misrepresentations. *Latimore*, 2012 WL 3061263, at *7; *Taylor*, 2012 WL 1643877, at *4 ("[insureds'] numerous contradictory statements about property lost or destroyed in the fire are material, as they bore materially on the amount [the insurer] would pay out if it honored the policy"); *see Parker*, 1988 WL 1058394, at *4. The record is clear on this point, and no reasonable juror would find to the contrary. Plaintiff's objection is overruled.

### B. Misrepresentations Regarding the Age of Personal Property

As previously noted, the personal property inventory spreadsheets contained a line for each piece of personal property claimed. Through these spreadsheets, Broad represented that the age of each item was one year or less. (EUO of John Broad, Ex. P, Doc. No. 113 at 981-999; Doc. No 120-1 at 2190-2208.) The age of the items claimed was significant, as the underlying policy covered the "actual cash value" of personal property rather than replacement cost. The actual cash value was determined by employing a depreciation factor that was based in part on the represented age of each item. (Doc. No. 113 at ¶¶ 7, 32; Doc. No. 120 at 1971-73.)

Relying on Broad's testimony at the EUO and at his deposition in this case, the magistrate judge determined that Broad misrepresented the age of certain personal property items claimed, noting that Broad was forced to admit on multiple occasions that items claimed to be less than one year old were in fact older. (Doc. No. 139 at 3816 [citing Doc. No. 113 at 909-910; Doc. No. 115 at 1255].) The magistrate judge found these misrepresentations to be material because they factored into North Pointe's estimation of Broad's claim. (Doc. No. 139 at 3818.)

Broad does not directly challenge the determination that he misrepresented the age of the items claimed. Instead, Broad takes exception to the fact that the magistrate judge appeared to find that he did not have the financial means to purchase all of the items he claimed within a year of the fire. (Doc. No. 140 at 3838 [citing Doc. No. 139 at 3817, fn. 15].) He suggests that he could have purchased the items at a discount "at odd lot stores, warehouse sales, salvage sales, etc. . . ." (*Id.* at 3838.) He also identifies an alternative possible source of revenue for his purchase (i.e. proceeds from the sale of his towing business). As further support, Broad points to Semegen's deposition testimony wherein he stated that the age of an item is not necessarily indicative of its value. (Doc. No. 140 at 3839 [citing Doc. No. 120 at 1972].)

Even assuming all this was true and was properly supported, it does not change the fact that Broad misrepresented the age of the claimed items. He does not question this determination; nor does he challenge the finding that the reported age of each item was a factor in determining its actual cash value. These misrepresentations were material as they affected North Pointe's obligations to Broad under the policy and had the effect of voiding the policy. "Statements of an insured misrepresenting the extent of loss, by overstating the value of the property lost, are clearly material since they affect the extent of the insurer's obligation to pay for a claimed loss." *Parker*, 1988 WL 1058394, at *4.

In an attempt to create genuine issues of material fact on this subject, Broad offers the affidavit of his adjuster, wherein Semegen averred that there were no misrepresentations. (Doc. No. 140-1 at ¶ 12 ["At no time was there any misrepresentation or attempt to avoid disclosing business or financial information of John Broad to North

14

Pointe Insurance Company or as to the nature and extent of the business personal property."]). While the affidavit appears to hint at the *possibility* that Broad and/or his adjuster made honest mistakes, Broad offers no factual support from which a trier of fact could find that the misrepresentations were inadvertent. Affidavits that contain no "specific facts" and "are merely conclusory, restating the requirement of the law . . . cannot create a genuine issue of material fact to defeat summary judgment." *Doren v. Battle Creek Health Sys*., 187 F.3d 595, 598-99 (6th Cir. 1999*); see Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (conclusory statements unsupported by specific facts will not permit a party to survive summary judgment). North Pointe came forward with evidence demonstrating that Broad made material misrepresentations as to the age of the items purportedly lost in the fire. In the face of this well supported summary judgment motion, Broad had the duty to identify specific facts in the record that would support his position that the misrepresentations—to which he admitted making— were inadvertent. Having failed to do so, the Court must conclude that no reasonable juror would find that the misrepresentations as to age of the items claimed were the result of honest mistakes. *See, e.g., Jenkins v. Metro. Life Ins. Co*., 171 Ohio St. 557, 563, 173 N.E.2d 122 (1961) ("Thus, in the absence of some evidence tending to indicate that the insured made an honest mistake . . . reasonable minds must, upon the undisputed evidence . . . conclude that the insured's answer [to a question on the insurance application] was willfully false and fraudulently made.").

C.      *Misrepresentations Regarding Broad's Business Finances*

This leaves Broad's alleged misrepresentations relating to the financial health of his business. Broad notes that the magistrate judge relied, in part, on an

15

exchange that took place between Broad and North Pointe's attorney at Broad's EUO.
The testimony unfolded as such:

> Q. And just in looking at the expenses, and I guess if you balance the expenses with the income, we're looking at about $100,000 in profit that you—according to the calculations you would have made for 2008. Does that sound about right?
>
> A. Probably so.
>
> Q. Okay.
>
> A. Or close. You see, that was just an average. I mean, that's exactly what I spent at Adesa, at one place.
>
> Q. $100,000?
>
> A. I mean—what was it? $115,000 just the one place, buying cars.

(Doc. No. 113 at 913.)

The magistrate judge determined that a review of the transcript leads to the inescapable conclusion that Broad was representing that his profits for 2008 would be approximately $100,000, when in fact his actual earnings were a little over $11,000. (Doc. No. 139 at 3822 [reasoning that "[the attorney's] question with respect to profit was clear and a reading of the transcript does not suggest that Broad did not understand [the attorney's] question."].) Broad advocates for a competing interpretation, insisting that a "plain reading" of the transcript reveals that he "was talking about the amount that he spent to purchase cars while [North Pointe's attorney] was asking him about the amount of his annual profit." (Doc. No. 140 at 3839.) At a minimum, Broad believes that he has unearthed a factual dispute.

While the Court finds this to be an exceedingly close call, it is constrained to err on the side of avoiding any factual determinations on summary judgment. At the

very least, there is some question as to whether the examiner and the deponent were on the proverbial "same page" during this dialogue. The examiner was focused on the profitability of Broad's business, but Broad—perhaps following his own train of thought—was recounting past automobile purchases. Though he may have been elaborating on his apparent acknowledgement that his profits were in the neighborhood of $100,000, it is possible as to this specific exchange that he thought he was answering a different question. Broad has identified a question of fact as to whether he represented in his EUO that his 2008 profits from his business were around $100,000. This portion of his objection is sustained.

It does not, however, improve Broad's position on summary judgment. In addition to the previously discussed misrepresentations relating to the age and amount of personal property claimed, which on their own support summary dismissal of the claim for breach of contract, the undisputed fact remains that Broad submitted income and expense statements that overstated his business's profitability for 2008 by a factor of more than ten. As part of his claim, Broad submitted an income statement that showed income of $319,930 for 2008. (Doc. No. 113 at 1004.) He also offered an expense statement that showed expenses of $203,424.33 for the same period, leaving $116,505.67 as profit.[5] (Doc. No. 113 at 1007.) Taken together, these documents constituted a representation—a representation that turned out to far from accurate. Broad's 2008 income tax return showed a net return of only $11,256. (2008 1040 Income Tax Return,

---

[5] As the magistrate judge observed, while the financial statements were described as "projected," they were submitted on May 1, 2009 in response to North Pointe's request for monthly income and expenses for twelve months preceding the loss. (*See* Doc. No. 113 at 1055-62.)

Doc. No. 125-2 at 2891.)

North Pointe was investigating whether Broad was involved in the suspected arson of his business. "The financial status of the insured is a material circumstance pertaining to a possible motive of the insured to procure a loss in order to collect on a policy." *Parker*, 1988 WL 1058394, at *5-*6 (misrepresentations that the business was "starting to be real profitable" were material to insurance claim); *see McCurdy*, 2013 WL 4050909, at *6 ("Misrepresentations by an insured that mask the severity of her financial situation have been found to be material insofar as they indicate a possible motive for arson.") (cites omitted); *Taylor*, 2012 WL 1643877, at *3 (similar). The fact that Broad grossly overestimated the profitability of his business at the time of the fire is both material and uncontroverted.

These undisputed misrepresentations, considered separately or in conjunction with the other misrepresentations relating to the claimed damaged personal property, provide unchallenged justification for North Pointe's decision to deny the claim under the concealment clause and defeat Broad's breach of contract claim. The magistrate judge's recommendation to grant North Pointe summary judgment on the breach of contract claim is accepted.[6]

---

[6] While not referenced in the R&R, the undisputed record supports a finding that Broad also made material misrepresentations as to his personal financial situation. Broad initially represented to North Pointe that he did not have any tax liens. (Doc. No. 111-1 at ¶ 15.) During his EUO, he admitted that he was subject to a tax lien. (*Id.*) Broad conceded that he did have an unemployment compensation tax lien placed against him and his wife in 1999 and 2001, *see* Doc. No. 125 at 2858, and while he insisted that he is making payments on these outstanding tax obligations, this is still evidence of yet another misrepresentation. Likewise, Broad also represented that he had never been involved in a lawsuit and had no judgments against him, but public records showed that Auto Owners Insurance Co. took a judgment against Broad shortly after the fire loss. (Doc. No. 111-1 at ¶ 15.) While Broad referenced a 2008 foreclosure action against him, filed by Wachovia Bank, in his opposition to North Pointe's dispositive motion (*see* Affidavit of John Broad, Doc. No. 125-2 at ¶ 24), he does not contest the judgment held by Auto Owners, or his failure to disclose it during the claim process. (Affidavit of John Broad, Doc. No. 125-2 at 2872.)

18

D.  *Broad's Ancillary Claims*

Having found that Broad made material misrepresentations during the claim process that justified the denial of the claim, the magistrate judge concluded that North Pointe could not have, as a matter of law, acted in bad faith. (Doc. No. 139 at 3827.) She further opined that, in the absence of a breach of contract or bad faith, Broad could not maintain a claim for emotional distress. (*Id*.) Broad does not challenge the treatment of his bad faith and emotional distress claims as ancillary to and dependent upon his underlying breach of contract claim.

It is possible to maintain a bad faith claim in the absence of a breach of the contractual obligations flowing from the policy. "Ohio law recognizes that bad faith in the adjustment of an insurance claim may exist without a valid claim for coverage; 'an insurer has a duty to act in good faith in the processing and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort irrespective of any liability arising from breach of contract.'" *Penton Media, Inc. v. Affiliated FM Ins. Co.*, 245 F. App'x 495, 501 (6th Cir. 2007) (quoting *Staff Builders, Inc. v. Armstrong*, 37 Ohio St. 3d 298, 525 N.E.2d 783, 788 (1988)); *see also Zoppo v. Homestead Ins. Co*., 71 Ohio St. 3d 552, 644 N.E.2d 397, syllabus ¶ 1 (1994).

In the present case, the allegations that support Broad's breach of contract claim provide the same factual foundation for his bad faith and emotional distress claims.

There are no allegations that other conduct, such as a failure to investigate,[7] amount to bad faith or resulted in emotional distress. Instead, these claims rise and fall with the contract claim.

"[A]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo*, 71 Ohio St. 3d at 554. "Where a policy does not cover a claim, it cannot be bad faith to refuse to cover it." *Latimore*, 2012 WL 3061263, at *8 (citing *Pasco v. State Auto. Mut. Ins. Co*., 1999 WL 1221633, at *5-*6 (Ohio Ct. App. 1999)). Because North Pointe is entitled to summary judgment on plaintiff's breach of contract claim, it is also necessary to grant it summary judgment on the bad faith claim. *See, e.g., id*. ("[the insured's] numerous misrepresentations during State Farm's investigation furnished reasonable justification for [the insurer's] refusal to cover his claim") (citing *Taylor*, 2012 WL 1643788, at *7). For the same reasons, it cannot be said that North Pointe's actions were extreme or outrageous. *See generally Pyle v. Pyle*, 11 Ohio App. 3d 31, 34, 463 N.E.2d 98 (Ohio Ct. App. 1983) (in order to recover for the intentional inflict of emotional distress, a plaintiff must show that the alleged

---

[7] In his objections, Broad criticizes North Pointe for failing to ask "[p]laintiff or the employees of the business to pick out" the claimed personal property items from the thumbnail photographs submitted with the inventories. (Doc. No. 140 at 3837.) Broad did not, however, allege this purported oversight in his complaint, instead, raising it for the first time in his objections. "[T]he Magistrate Judge Act, 28 U.S.C. § 631 *et seq*. . . . does not allow parties to raise at the district court stage new arguments or issues. . . ." *Murr v. United States,* 200 F.3d 895, 902 n.1 (6th Cir. 2000) (citing, *inter alia*, *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998) ("issues raised for the first time in objections to [a] . . . report and recommendation are deemed waived")); *Marr v. Foy*, No. 1:07-CV-908, 2010 WL 3061297, at *4 (W.D. Mich. Aug. 3, 2010) ("It is well established that a party may not raise an argument, advance a theory, or marshal evidence before a District Judge that was not fairly presented to the Magistrate Judge.") "The Magistrates Act was not intended 'to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court.'" *Jones-Bey v. Caruso*, 2009 WL 3644801, at *1 (W.D. Mich. Oct. 30, 2009) (quoting *Greenhow v. Sec'y of Health & Human Servs*., 863 F.2d 633, 638-39 (9th Cir. 1988), *rev'd on other grounds sub nom. by United States v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992) (en banc)).

"conduct was so extreme and outrageous as to go beyond all bounds of decency and was such that it can be considered as utterly intolerable in a civilized community . . . .") (cites omitted). These claims are subject to summary dismissal.

**IV.**        CONCLUSION

For all of the foregoing reasons, the R&R is **ACCEPTED**, in part, North Pointe's motion for summary judgment is **GRANTED**, in full, and Broad's claims are **DISMISSED**. Additionally, because North Pointe has no obligation to pay under the policy issued to Broad, North Pointe's counterclaim for contribution and indemnification against third-party Tucker is **MOOT**. This case is closed.

**IT IS SO ORDERED**.

Dated: March 19, 2014

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**